## MATTER OF BONANNI

### In Exclusion Proceedings

### A-11698112

*Decided by Board September 2, 1966*

A returning resident commuter who has been absent from the United States due to uncontrollable circumstances (personal illness), who had no intention to abandon commuter status, and who, less than six months after he again became employable, has applied for admission at the border ready and able to start work immediately, has not abandoned his commuter status, not withstanding he is destined to new employment, and he is admissible to the United States as a returning resident alien commuter.

EXCLUDABLE: Act of 1952—Section 212(a)(20)  [8 U.S.C. 1182(a)(20)]—
Immigrant without a visa.

The special inquiry officer ordered applicant's admission as a commuter, after an absence of more than six months following the onset of a serious illness, to take up a new employment, and certified the case to the Board.

Applicant is a 38-year-old married male, born in France and a citizen of Italy, who was lawfully admitted to the United States for permanent residence on May 12, 1905. He became a commuter on the basis of a position he obtained with the Chrysler Corporation in Detroit, Michigan. He worked steadily at this job until October 11, 1965, when he suffered a heart attack. He was hospitalized for 25 days and thereafter restricted in his activities, on doctor's orders, for several months. He was supported during that time by sick benefits received from the Chrysler Corporation. Applicant reported back to Chrysler on January 18, 1966, ready for work, but it was found there was no work available that he could perform.

On July 15, 1966, applicant presented himself at the border for admission as a commuter, with a letter establishing the immediate availability of a job for him at Marlco Incorporated, in Southfield, Michigan. He was considered by the immigrant inspector not to be clearly admissible as a commuter, by virtue of having been with-

out employment in the United States for a period in excess of six months.

The facts of the case and the applicable law are clearly set forth in the special inquiry officer's decision. Certification is requested for the clarification of a single point:

Has a commuter lost or abandoned his status where, after an interruption in employment of more than six months, brought about by uncontrollable circumstances (in this case, his own serious illness), he seeks to return to work for a *new* employer?

We believe the special inquiry officer is correct in holding, on the facts in this case, that commuter status has not been lost. The applicant discontinued employment on October 11, 1965, solely by reason of illness; that he had no intention of abandoning his status or employment is evidenced by the fact that as soon as he again became employable, which was on January 18, 1966, he immediately reported back to his original employer, ready to go to work; but was unable to do so solely because of conditions there. Less than six months elapsed between that time and the time that he presented himself at the border, ready to resume work, and with evidence that a new job was immediately available to him.

The background and incidents of "commuter" status have been set forth thoroughly in *Matter of Bailey*, Int. Dec. No. 1546, and *Matter of Burciaga-Salcedo*, Int. Dec. No. 1601. The cases hold, without exception, that commuter status is not lost by being out of employment for six months or more, provided such discontinuance of employment is brought about by uncontrollable circumstances such as accident, illness or pregnancy (this has been extended, in the *Burciaga-Salcedo* case, *supra*, to include the mother who is not working because of the illness of her child). The cases go even further and hold that the duration of the disability is not be to included in the six-month period, which is tolled until the applicant becomes employable again, and starts running only from that time.

To what employment must the commuter return? The prevalent opinion seems to be that he must go back, within six months after he becomes employable again, to the job on which he was working at the onset of the disability, thereby demonstrating that he has not lost his position. (Cf. *Matter of B—*, A–4089813, C.O., June 26, 1946, cited in Editor's note to 3 I. & N. Dec. 519, at 527; *Matter of L—*, 4 I. & N. Dec. 454 (C.O. 1951).)

We do not believe that this is a valid or necessary requirement. In *Matter of Burciaga-Salcedo*, *supra*, we held the applicant admissible when the record showed that she was coming to take up new employment within the time limit; in *Matter of F—*, A–6778564,

C.O., Dec. 21, 1949, cited in Editor's note to 3 I. & N. Dec. 519, at 526, the applicant came into the United States to take up temporary employment with his brother and was held to have retained his commuter status.

When it became necessary for the commuter to be admitted for lawful permanent residence, employer was administratively equated with domicile. The following guidelines were set out:

An alien granted the border crossing privilege may lose such right in much the same manner as an alien who has been admitted for the purpose of residence may lose the right to reenter. For instance, an alien residing in foreign contiguous territory and enjoying the border crossing privilege abandons such right when he *discontinues* his employment in the United States *and does not renew, or seek to renew,* same within a period of six months. Intention shall govern in such cases to the same extent that it governs in the cases of aliens who depart from the United States for other countries after once having been admitted.[1] (Emphasis supplied.)

Thereafter, a definite standard was set up, to the effect that when a commuter had been out of employment in the United States for six months, he was to be deemed to have abandoned his status of residence in the United States.[2]

In the earliest case we have seen in which an equitable solution was sought for the problem of the commuter whose absence of more than six months from employment was due to illness, the Central Office, in reliance upon the above, stated:

From a perusal of the foregoing, it is evident that the salient points which determine abandonment of commuter's status are (1) intention and (2) loss of employment in the United States. *Matter of B—, supra.*

It then went on to hold that even when it was established that there was no intent to abandon, it must also be shown that the previous employment was not lost.

Aside from the question of whether "discontinues his employment" and "has been out of employment" are exact equivalents of "loss of employment," we believe that the reading by the Central Office of the two guidelines, in the above case, was erroneous. The thrust of those documents was that discontinuance of employment without seeking to renew same within six months was to be deemed abandonment of commuter status, but that actual intention was to govern as to whether there had been such an abandonment, in the same way that it did for resident aliens who were absent from the United States for longer than the permitted periods. The

---

[1] Central Office letter November 16, 1927, 55470/537–A. cited in Editor's Note to 3 I. & N. Dec. 519.

[2] O.I. 110.6, cited in Editor's note to 3 I. & N. Dec. 519.

discontinuance of employment was regarded as prime evidence of the intention to abandon, and soon became a conclusive presumption of abandonment, except for the aliens whose nonemployment was due to the uncontrollable circumstances set forth above. It was not a separate and further factor that had to be disproved along with intent.

There are many reasons why the interpretation in *Matter of B—, supra,* should not govern. First, it negates the concept of the tolling of the six-month period during actual disability, and its commencement only after the alien has once again become employable. If the alien who had been disabled and away from his work for more than six months could return only to his original position, what need would there be for a six-month period thereafter? He would have a job waiting and available for him, and would need only a tolling of the period of actual disability which exceeded six months.

Second, it frustrates the purpose for which the tolling was evolved, namely, the assistance of the alien who has been seriously ill or disabled for a substantial period of time. Very few employers, outside of government or the major industrial organizations, are able or willing to keep a position open for a person who has been out ill for more than six months. Thus, the alien whose resources, physical, moral and financial, have been drained by a lengthy period of illness, with smaller income and larger expenses, who comes back to his employer in the hope of resuming his prior position, and is dealt the blow of learning there is no longer a job for him, is, if this interpretation is to be followed, immediately dealt the equally serious blow of losing commuter status, and if there is an exclusion, he may be unable to apply for admission to the United States for a full year thereafter.

Third, it places the commuter who has been ill, and whose absence of more than six months has in effect been "forgiven" by the tolling of the period until he is again employable, under a disability not borne by his fellow commuter who has not been seriously ill. The latter is not restricted to any one job or to any one employer. If he is displeased with a particular position, or is laid off because of lack of work, or even fired for cause, he can seek new employment wherever he can find it, and so long as he is not out of work for six months, there is no question of abandonment of his commuter status. But, if the *Matter of B—* interpretation is to govern, the commuter who has been ill, and had his absence during illness forgiven, ostensibly to place him on an equality with his fellow commuters, is restricted to applying for work with his former employer, and if nothing is available there, possibly he might be

considered to have maintained his status if a position were to open up for him with his former employer before the expiration of the six-month period. He does not have the normal freedom to explore the labor market that his healthy colleague has, and to take work, which he urgently needs, wherever he can find it.

We do not believe that such results were ever intended or desired. Where, as here, there was no intention to abandon commuter status, the pertinent absence was caused wholly by uncontrollable circumstances, and the applicant appeared at the border ready and able to start work immediately, less than six months after he became employable again, there has been no abandonment of commuter status despite a change in employment.

**ORDER:** It is ordered that no change be made in the order of the special inquiry officer.